# United States Court of Appeals for the Federal Circuit

---

**SPEEDTRACK, INC.,**
*Plaintiff-Appellant*

**v.**

**OFFICE DEPOT, INC., CDW CORPORATION, NEWEGG, INC., PC CONNECTION, INC.,**
*Defendants-Appellees*

**CIRCUIT CITY STORES, INC., COMPUSA, INC.,**
*Defendants*

---

2014-1475

---

Appeal from the United States District Court for the Northern District of California in No. 4:07-cv-03602-PJH, Judge Phyllis J. Hamilton.

---

Decided: June 30, 2015

---

DANIEL LUKE GEYSER, McKool Smith, P.C., Dallas, TX, argued for plaintiff-appellant. Also represented by ALAN PETER BLOCK, RODERICK GEORGE DORMAN, McKool Smith Hennigan, P.C., Los Angeles, CA.

STEVEN M. BAUER, Proskauer Rose LLP, Boston, MA, argued for defendants-appellees. Also represented by JOHN E. ROBERTS; COLIN CABRAL, Los Angeles, CA.

Defendant-appellee CDW Corporation also represented by BENJAMIN T. HORTON, THOMAS LEE DUSTON, Marshall, Gerstein & Borun LLP, Chicago, IL for CDW Corporation only.

—————————

Before PROST, *Chief Judge,* MAYER, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

SpeedTrack, Inc. ("SpeedTrack") filed suit against Office Depot, Inc., CDW Corporation, Newegg Inc., and PC Connection, Inc. (together, "Appellees") alleging infringement of U.S. Patent No. 5,544,360 ("the '360 Patent"), which is directed to a computer filing system for accessing files and data according to user-designated criteria. Specifically, SpeedTrack alleged that Appellees' online retail websites infringe the '360 Patent by using software developed by Endeca Technologies, Inc. ("Endeca"): the Endeca Information Access Platform ("IAP" or "IAP software").

Appellees moved for summary judgment on grounds that SpeedTrack's claims were precluded by a prior lawsuit where we affirmed the district court's judgment that the same IAP software did not infringe the '360 Patent. *SpeedTrack, Inc. v. Endeca Techs., Inc.*, 524 F. App'x 651 (Fed. Cir. 2013) ("*Walmart*"). The district court granted judgment as a matter of law in favor of Appellees, finding that SpeedTrack's claims are barred in part by res judicata and in full under the *Kessler* doctrine as announced in *Kessler v. Eldred*, 206 U.S. 285 (1907). *SpeedTrack, Inc. v. Office Depot, Inc.*, No. 4:07-cv-3602, 2014 WL 1813292 (N.D. Cal. May 6, 2014). Because we agree that the *Kessler* doctrine precludes SpeedTrack's infringement claims in full, we affirm.

## I. BACKGROUND

### A. The '360 Patent

SpeedTrack is the owner by assignment of the '360 Patent, entitled "Method for Accessing Computer Files and Data, Using Linked Categories Assigned to Each Data File Record on Entry of the Data File Record." The '360 Patent describes methods for searching and accessing files stored on a computer system. "The invention allows a user to define categories for files stored in a computer system, and to edit such categories as they are used, to designate all applicable categories for each file, and to link categories in user-definable ways." '360 Patent, col. 3 l. 66-col. 4 l. 2.

The claimed methods require use of: (1) "category descriptions" that correspond to one or more of the stored files, *Walmart*, 524 F. App'x at 655-56; (2) a "file information directory" containing information linking the "category descriptions" to specific files stored in the system, '360 Patent, col. 4 ll. 58-62; and (3) a "search filter" which is used to search through the "file information directory" to locate those files that have "category descriptions" matching those in the search filter, *id.* at col. 10 ll. 54-60.

Representative claim 1 recites the following:

A method for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, the method comprising the steps of:

(a) initially creating in the computer system a category description table containing a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;

(b) thereafter creating in the computer system a file information directory comprising at least one entry corresponding to a file on the data storage system, each entry comprising at least a unique file identifier for the corresponding file, and a set of category descriptions selected from the category description table; and

(c) thereafter creating in the computer system a search filter comprising a set of category descriptions, wherein for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter.

'360 Patent, col. 16 l. 54-col. 17 l. 11.

## B.  The Prior Walmart Litigation

In November 2006, SpeedTrack filed suit against Walmart, alleging that Walmart's online retail website infringed the '360 Patent.  Specifically, SpeedTrack alleged that Walmart's use and maintenance of its website infringed the '360 Patent by permitting visitors to search for products available for sale by selecting pre-defined categories descriptive of the products. *SpeedTrack, Inc. v. Wal-Mart Stores, Inc.*, No. 06-cv-7336, 2012 WL 581338, at *1 (N.D. Cal. Feb. 22, 2012).  Walmart licensed and used Endeca's IAP software to achieve this search functionality.

Because SpeedTrack's allegations were based on Walmart's use of the IAP software, Endeca sought and obtained permission to intervene.  In its complaint in intervention, Endeca sought: (1) declaratory judgment that its IAP software does not infringe the '360 Patent, either literally or under the doctrine of equivalents; and (2) declaratory judgment that the '360 Patent is invalid. Endeca Techs., Inc. Compl. in Intervention at 4, *Speed-*

*Track, Inc. v. Wal-Mart Stores, Inc.*, No. 06-cv-7336 (N.D. Cal. Apr. 13, 2007), ECF No. 64.

The district court conducted claim construction proceedings and issued its claim construction order in June 2008. In relevant part, the court construed the term "category description" as "information that includes a name that is descriptive of something about a stored file." *Walmart*, 524 F. App'x at 655-56. After claim construction, Endeca filed a petition for reexamination of the '360 Patent with the Patent and Trademark Office ("PTO"). *Id.* at 654. The district court stayed proceedings pending the outcome of the reexamination. In March 2011, the PTO issued its decision confirming the patentability of the '360 Patent and allowing an additional independent claim. *Id.* at 654-55.

The parties subsequently filed cross-motions for summary judgment. As part of their motion, Walmart and Endeca presented a new argument on the term "category description," arguing that the accused product did not infringe because it did not include a "*name* that is descriptive of something about a stored file," but instead included a *number*. *SpeedTrack*, 2014 WL 1813292, at \*1 (emphasis in original). The district court ordered additional briefing on that issue, and, in December 2011, SpeedTrack moved to amend its final infringement contentions to add an allegation that Walmart and Endeca infringed the "category description" limitation under the doctrine of equivalents. *Id.* The district court denied the motion for leave to amend, "finding that SpeedTrack had actually been on notice of defendants' non-infringement argument since June 23, 2011, when defendants served a supplemental interrogatory response indicating that their software used numbers, rather than names, and thus did not meet the patent's 'category description' limitation." *Id.*

In February 2012, the district court granted summary judgment of noninfringement in favor of Walmart and Endeca. The court found that, because the accused IAP software uses numerical identifiers instead of descriptive words, IAP users did not use "category descriptions" as required by the '360 Patent. *SpeedTrack,* 2012 WL 581338, at *10. Specifically, the court stated that:

> As the court construes the "category description" limitation . . . plaintiff must demonstrate that the "walmart-sgmt0.records.binary" file in Wal-Mart's system contains entries that are comprised of alphabetic descriptive names, if it is to prove that defendants' accused system infringes. And since it is undisputed that plaintiff has not come forward with evidence that "walmart-sgmt0.records.binary" includes alphabetic descriptive names, plaintiff cannot demonstrate that the accused system infringes.

*Id.*

The district court entered final judgment of noninfringement on March 30, 2012, awarding Walmart a declaration that it "has not infringed and does not infringe" the asserted patent claims. Final Judgment at 3, *SpeedTrack, Inc. v. Wal-Mart Stores, Inc.*, No. 06-cv-7336 (N.D. Cal. Mar. 30, 2012), ECF No. 369. As to Endeca's complaint in intervention, the court awarded final judgment that: (1) Endeca does not directly infringe the asserted patent claims "by making, using, offering to sell or selling the Endeca Information Access Platform"; and (2) "Walmart's use of the Endeca Information Access Platform does not infringe, directly or indirectly," those same claims. *Id.*

SpeedTrack appealed the court's final judgment to this court. On appeal, we affirmed the district court's construction of "category description" and held that "the district court did not err in granting Endeca's motion for

summary judgment of noninfringement." *Walmart*, 524 F. App'x at 657. We reiterated that it was SpeedTrack's burden to show that the "walmart-sgmt0.records.binary" file in the accused system "contains entries that are comprised of alphabetic descriptive names" to show infringement. *Id.* Because it was undisputed that the entries consisted only of numerical identifiers, we concluded that Endeca was entitled to summary judgment of noninfringement as a matter of law. *Id.*

## C. Procedural History

SpeedTrack filed its initial complaint in this case in July 2007, while the *Walmart* action was pending. SpeedTrack alleged that Appellees infringed the '360 Patent based on their use of the same IAP software at issue in *Walmart*. Given the overlap in issues, the district court stayed proceedings in this case pending the outcome of the *Walmart* litigation. While the present case was stayed, Oracle Corporation ("Oracle") acquired Endeca in 2011.

After this court issued its decision in *Walmart*, the district court lifted the stay. At that point, SpeedTrack informed the district court that it would limit its claims to infringement under the doctrine of equivalents. Appellees moved to dismiss SpeedTrack's complaint on grounds that the asserted infringement claims were barred by: (1) res judicata or claim preclusion; (2) collateral estoppel or issue preclusion; and (3) the Supreme Court's *Kessler* doctrine, which bars suits against customers for use of a product previously found not to infringe in a suit against the supplier of that product. *SpeedTrack*, 2014 WL 1813292, at *2.

The district court denied the motion to dismiss, finding that the issues raised required consideration of materials outside of the pleadings, and thus were more appropriately raised in a motion for summary judgment. The court also granted SpeedTrack's request for time to

conduct discovery from Appellees regarding their indemnification agreements with Endeca. After the parties conducted discovery, Appellees moved for summary judgment, arguing that the district court already found in the *Walmart* case that the accused Endeca IAP software does not infringe the '360 Patent, and that they use the software in the same way. *Id.*

On May 6, 2014, the district court granted Appellees' motion for summary judgment based on res judicata (in part) and the *Kessler* doctrine (in full), but held that collateral estoppel did not apply. First, the court found that SpeedTrack's infringement claims were barred by res judicata to the extent they related to acts occurring on or before March 30, 2012—the date of the final judgment in *Walmart*. *Id.* at *7. In reaching this conclusion, the court found that Appellees presented evidence to show that they use the Endeca IAP software in "essentially the same" way as Walmart—using numbers rather than names as a category descriptor. *Id.* at *4-5. Although SpeedTrack argued that, even if its literal infringement claims were barred, it could still assert claims of infringement under the doctrine of equivalents because those claims were not asserted in *Walmart*, the district court found that res judicata "bars both claims that were brought as well as those that *could have been brought*." *Id.* at *5 (quoting *Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1053 (Fed. Cir. 2014) (emphasis in original)). The court further found that Appellees were in privity with Endeca by virtue of their indemnification agreements. *Id.* at *6.

Next, the district court held that the *Kessler* doctrine precluded "the entirety of SpeedTrack's suit." *Id.* at *9. The court cited our decision in *Brain Life* as evidence that "*Kessler* is still in force," and can preclude some claims "that are not otherwise barred by claim or issue preclusion." *Id.* at *8 (quoting *Brain Life*, 746 F.3d at 1055-56). Applying *Kessler*, the court found that, "[b]y virtue of the

Wal-Mart decision, the accused Endeca technology acquired the status of a non-infringing product." *Id*. at \*9. In reaching this conclusion, the court explained that: (1) Appellees "have shown that their implementation of the Endeca software is 'essentially the same' as the implementation adjudged to be non-infringing in Wal-Mart;" and (2) SpeedTrack "has been unable to identify any material differences between [Appellees'] use of the software and Wal-Mart's non-infringing use of the same software." *Id*. Although SpeedTrack argued that it had not yet litigated the issue of whether Appellees' use of the IAP software infringes under the doctrine of equivalents, the court cited *Brain Life* for the proposition that "the *Kessler* doctrine bars all subsequent assertions of the same *patent*." *Id*. (citing *Brain Life*, 746 F.3d at 1059) (emphasis in original). The court reasoned that, "if the *Kessler* doctrine bars the assertion of new *claims*, it must also bar the assertion of new *theories* involving the same, already-asserted claims." *Id*. (emphases in original). The court concluded that, "by failing to prevail in its infringement suit against Wal-Mart, SpeedTrack lost the right to assert any claims of the '360 patent against any customers of Endeca who use the accused software in 'essentially the same' manner as did Wal-Mart." *Id*.

Though the district court granted summary judgment in favor of Appellees, it found that Appellees could not invoke collateral estoppel. *Id*. at \*7. The court explained that SpeedTrack could have raised its theory of infringement under the doctrine of equivalents in *Walmart*, but failed to do so. Because that issue was not "actually litigated" in the *Walmart* case, the court concluded that collateral estoppel cannot bar SpeedTrack's claims that Appellees infringed the '360 Patent under the doctrine of equivalents. *Id*.

SpeedTrack timely appealed the district court's final judgment to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1) (2012).

## II. STANDARD OF REVIEW

We review a grant or denial of summary judgment under the law of the regional circuit, here the Ninth Circuit. *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1194 (Fed. Cir. 2013). The Ninth Circuit reviews the district court's grant of summary judgment without deference. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Viewing the facts in the light most favorable to the nonmoving party, we must determine whether a genuine issue of material fact exists, and whether the district court applied the law correctly." *S. Cal. Darts*, 762 F.3d at 925.

## III. DISCUSSION

On appeal, SpeedTrack argues that the district court "misapplied the settled rules of res judicata, and it wrongly invoked the *Kessler* doctrine." Appellant Br. 15. Specifically, SpeedTrack submits that Appellees failed to satisfy the elements of the controlling res judicata test and that *Kessler* is both obsolete and distinguishable on its facts.

In response, Appellees argue that: (1) the *Kessler* doctrine bars SpeedTrack from suing Oracle's customers based on their use of the same IAP software that was already found to be noninfringing in *Walmart*; and (2) claim preclusion prohibits SpeedTrack from relitigating its infringement claims against Appellees who, by virtue of their indemnification agreements, are in privity with Endeca. We agree with Appellees on their first point, and find that the *Kessler* doctrine precludes SpeedTrack's infringement claims in their entirety. Because this conclusion is dispositive, we need not reach SpeedTrack's additional arguments on appeal.

## A.  The *Kessler* Doctrine

The *Kessler* doctrine "bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent." *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987).  As noted, this doctrine originated in the Supreme Court's decision in *Kessler v. Eldred*, 206 U.S. 285 (1907).  There, Eldred held a patent for an electric lighter and brought a claim of infringement against Kessler, a manufacturer and retailer of electric cigar lighters.  *Id*. at 285.  The district court found that Kessler's product did not infringe, and the Seventh Circuit affirmed on appeal.  *Id*. at 286.  Six years later, Eldred filed suit alleging that one of Kessler's customers infringed the same patent.  Kessler intervened to indemnify its customer, and also filed a separate suit against Eldred, seeking to enjoin him from filing infringement suits against Kessler's customers for use of the same lighter that had already been found to be noninfringing in the prior action.  *See id*. at 286-87.

On appeal, the Supreme Court agreed with Kessler, finding that the final decision in the first suit against Kessler had "settled finally and everywhere . . . that Kessler has the right to manufacture, use and sell" the product in question.  *Id*. at 288.  The Court further found that the prior suit "conclusively decreed the right of Kessler to manufacture and sell his manufactures free from all interference from Eldred . . . and the corresponding duty of Eldred to recognize and yield to that right everywhere and always."  *Id*.  In reaching this conclusion, the Supreme Court indicated that it "need not stop to consider whether the judgment in the case of *Eldred v. Kessler* had any other effect than to fix unalterably the rights and duties of the immediate parties to it, for the reason that only the rights and duties of those parties are necessarily in question here."  *Id*.  The Court further stated that "[i]t may be that the judgment in *Kessler v.*

*Eldred* will not afford Breitwieser, a customer of Kessler, a defense to Eldred's suit against him. Upon that question we express no opinion." *Id.* Instead, the relevant inquiry was "whether, by bringing a suit against one of Kessler's customers, Eldred has violated the right of Kessler." *Id.* at 289. The Court concluded that, "[l]eaving entirely out of view any rights which Kessler's customers have or may have, it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone." *Id.*

The Supreme Court subsequently explained that, under *Kessler*, a party who obtains a final adjudication in its favor obtains "the right to have that which it lawfully produces freely bought and sold without restraint or interference." *Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413, 418 (1914). The Court specified that this right "attaches to its product—to a particular thing—as an article of lawful commerce . . . ." *Id.* We have likewise recognized that *Kessler* granted a "limited trade right" that attaches to the product itself. *MGA*, 827 F.2d at 734-35 ("Since the accused machines here are admittedly the same in both suits, it is LaSalle Tool's right that the accused machines be freely traded without interference from MGA.").

More recently, we reaffirmed the continued vitality of the *Kessler* doctrine, holding that it "precludes some claims that are not otherwise barred by claim or issue preclusion." *Brain Life*, 746 F.3d at 1055-56. In *Brain Life*, we explained that, in an action against a manufacturer or supplier of an allegedly infringing device, "when [the] alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquires the 'status' of a noninfringing device vis-à-vis the asserted patent claims." *Id.* at 1057 (citation omitted). There, the plaintiff's predecessor in interest—MIDCO—accused defendant Elekta of infringing its patent. Although

MIDCO accused Elekta of infringing both the patent's apparatus and method claims, it ultimately abandoned the method claims prior to trial. *Id.* at 1058. At trial, the jury found that Elekta infringed the apparatus claims, but on appeal, we reversed the infringement finding, and remanded the case to the district court to enter judgment of noninfringement as a matter of law in favor of Elekta. *Id.* at 1050. On remand, MIDCO attempted to revive the method claims, but the district court refused to reopen the case, and instead entered final judgment in favor of Elekta. MIDCO appealed that judgment and we summarily affirmed the district court's decision not to reopen the case. *Id.*

MIDCO subsequently licensed the patent at issue to another company which, in turn, licensed it to Brain Life. *Id.* Brain Life filed suit against Elekta, seeking to assert the method claims that were dismissed prior to trial in the previous MIDCO case. Although the district court granted summary judgment in Elekta's favor on res judicata grounds, we found that only those claims predating the final judgment in the MIDCO litigation were barred on those grounds. We went on to find, however, that, though not barred by res judicata, Brain Life's claims *were* barred by the *Kessler* doctrine. Specifically, we found that, "once the accused devices in the MIDCO Litigation were adjudged to be noninfringing with respect to the asserted claims and judgment was entered as to all claims, Elekta was free to continue engaging in the accused commercial activity as a non-infringer." *Id.* at 1058. We concluded that, "by virtue of gaining a final judgment of noninfringement in the first suit—where all of the claims were or could have been asserted against Elekta—the accused devices acquired a status as noninfringing devices, and Brain Life is barred from asserting that they infringe the same patent claims a second time." *Id.*

The district court here found that "the *Kessler* doctrine, as applied by the *Brain Life* court, is directly applicable to this case," and that the IAP software acquired the status of a noninfringing product in *Walmart*. *Speed-Track*, 2014 WL 1813292, at *9. There is no doubt that if Oracle were a party to this action, the facts here would fall squarely within *Kessler*. SpeedTrack alleged in a prior suit that Walmart's use of the IAP software infringed the '360 Patent. *Walmart*, 524 F. App'x at 653-54. Oracle's predecessor, Endeca, intervened in that suit and sought declaratory judgment that its technology does not infringe. Both the district court and this court agreed, finding that the IAP software, and Walmart's use of that software, does not infringe the '360 Patent. *Id.* at 657.

SpeedTrack is now pursuing the same infringement claims against other Oracle customers for allegedly infringing the same patent using the same IAP software found not to infringe in *Walmart*. As the district court found, Appellees in this case demonstrated that their use of the IAP software is "'essentially the same' as the implementation adjudged to be non-infringing in *Wal-Mart*—specifically, [Appellees] have shown that they use numbers, rather than names, as category descriptors." *SpeedTrack*, 2014 WL 1813292, at *9.[1] And, the district court found that, despite discovery, SpeedTrack "has been unable to identify any material differences between

---

[1]    Likewise, at oral argument, counsel for Speed-Track conceded that Appellees' use of the IAP software is "essentially the same" as that at issue in *Walmart*. *See* Oral Argument at 3:08-3:20, *available at* http://www.cafc. uscourts.gov/oral-argument-recordings/14-1475/all ("Their other use of the software is essentially the same as the use of the software in Walmart—we concede that—but that is not dispositive for claim preclusion and it is certainly not dispositive for issue preclusion.").

[Appellees'] use of the software and Wal-Mart's non-infringing use of the same software." *Id.* Given these circumstances, the judgment in the *Walmart* case "settled finally and everywhere" that the IAP software does not infringe the '360 Patent. *Kessler*, 206 U.S. at 288.

Applying *Kessler*, it is Oracle's right that its "customers should, in respect of the [IAP software], be let alone by" SpeedTrack, and it is SpeedTrack's "duty to let them alone." *Id.* at 289. Because *Kessler* creates a limited trade right that attaches to the IAP software itself, Oracle would have the right to an order prohibiting SpeedTrack from asserting that Oracle's customers infringe the '360 Patent by their use of the same software litigated in the *Walmart* case. *See Rubber Tire*, 232 U.S. at 418; *MGA*, 827 F.2d at 734-35. SpeedTrack does not seriously dispute this conclusion on appeal. Instead, it argues that: (1) the right recognized in *Kessler* is one assertable, if at all, only by the product manufacturer or supplier, not by its customers; (2) *Kessler* does not apply where the manufacturer supplies only a component which is combined with other components and it is the combined configuration that infringes; and (3) *Kessler* is a doctrine which has been rendered obsolete by later developments in the law. We address each of these arguments in turn.

## B. Customer Invocation of *Kessler*

SpeedTrack submits that, if *Kessler* is still good law, it should be limited to its "original footprint." Appellant Br. 52. SpeedTrack asserts that *Kessler* does not apply to the facts presented here because the Supreme Court explicitly reserved the question of whether a customer is entitled to invoke *Kessler* and we should conclude that a customer may not do so. We decline to limit *Kessler* as SpeedTrack urges.

The question of whether a customer can invoke the *Kessler* doctrine has divided circuits, and we have not specifically addressed it. *See Tech. Licensing Corp. v.*

*Thomson, Inc.*, 738 F. Supp. 2d 1096, 1101 (E.D. Cal. 2010) ("The Supreme Court, Federal Circuit, and Ninth Circuit[] . . . have declined to address the issue of whether the customer has the right to invoke the Kessler doctrine as a defense to patent infringement suits.").

For its part, the Fourth Circuit has said that a customer can raise the *Kessler* doctrine as a defense to suit. *Gen. Chem. Co. v. Standard Wholesale Phosphate & Acid Works, Inc.*, 101 F.2d 178, 179-80 (4th Cir. 1939). In that case, the court recognized that, after *Kessler*, a manufacturer, successful in an infringement suit, could intervene in a suit "by the patentee against one of the manufacturer's customers and have the suit dismissed on the sole ground of the prior adjudication." *Id.* at 180 (citation omitted). The court reasoned that, "if the suit against the customer may be dismissed upon the intervention and at the request of the manufacturer, there is no valid reason why it may not be dismissed upon the motion of the customer himself." *Id.* ("Since the customer can hold the manufacturer from whom he has purchased for any damage which he may be required to pay because the article infringes the patent, he should be held to be subrogated to the right of the manufacturer under the judgment against the patentee adjudging that there is no infringement with respect to such article."); *see also Molinaro v. Am. Tel. & Tel. Co.*, 460 F. Supp. 673, 675-76 (E.D. Pa. 1978) (citing *General Chemical* for the proposition that "[c]ourts soon recognized that the rationale underlying the *Kessler* doctrine would support the assertion not only by a manufacturer, but also by a customer, of the preclusive effect of a prior judgment in favor of the manufacturer-supplier and against the patentee").

The Sixth Circuit has reached the opposite conclusion, noting that the "cause of action against the manufacturer for injunction and damages and accounting is, in general, a distinct cause of action from that against the purchasing user for an injunction against him and for damages and

profits coming from his infringement." *Wenborne-Karpen Dryer Co. v. Dort Motor Car Co.*, 14 F.2d 378, 379 (6th Cir. 1926). The court found that, "[a]lthough plaintiff had a suit pending against the manufacturer in another circuit, it had the (initial) right to sue a user in this circuit and get the judgment of different courts as to the patent." *Id.* at 379-80. In dissent, however, Judge Donahue noted that the manufacturer, the Cutler Company, alleged in its intervening petition that it "entered into a contract with its customer, the Dort Company, to defend that company against any action brought for infringement against it, and to save the Dort Company harmless from the payment of any damages that may be assessed against it in such suit." *Id.* at 381 (Donahue, J., dissenting). According to Judge Donahue, once judgment was entered in the first suit in favor of the manufacturer, "it was equally the duty of plaintiff to dismiss any suits then pending against the customers . . . as it was its duty to refrain from bringing other suits." *Id.* ("Any other course would permit the plaintiff to trifle with courts and by subterfuge evade the effect of a final decree against it.").

As previously discussed, *Kessler* provides a party who has prevailed in a patent litigation the right to manufacture, use, or sell the product that has been deemed not to infringe without fear of continued challenges to that right based on the same patent. This court recognized in *MGA* that the "*Kessler* doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent; otherwise, the effect of the prior judgment would be virtually destroyed." 827 F.2d at 734. *Kessler* emphasized the right of the adjudged noninfringing manufacturer to "sell his wares freely," and the patent owner's corresponding duty to leave that manufacturer's customers alone. *Kessler*, 206 U.S. at 289. Accordingly, *Kessler* sought to prevent patent owners from undermining adverse final judgments by relitigating

infringement claims against customers who use the product at issue.

We conclude that the rationale underlying the *Kessler* doctrine supports permitting customers to assert it as a defense to infringement claims. Although the Supreme Court in *Kessler* focused exclusively on the manufacturer's rights, and expressed no opinion on whether a customer could assert the defense, it recognized the fact that the manufacturer and customer's interests are intertwined, remarking that "[n]o one wishes to buy anything if with it he must buy a law suit." *See id.* Allowing customers to assert a *Kessler* defense is consistent with the Court's goal of protecting the manufacturer's right to sell an exonerated product free from interference or restraint. A manufacturer cannot sell freely if it has no customers who can buy freely. Indeed, the Court subsequently explained that the *Kessler* doctrine grants a limited trade right that attaches to the "product—to a particular thing—as an article of lawful commerce." *Rubber Tire*, 232 U.S. at 418; *MGA*, 827 F.2d at 734. Because it is a right that attaches to the noninfringing *product*, and it is a right designed to protect the unencumbered sale of that product, Speed-Track's argument that the *Kessler* doctrine can only be invoked by a manufacturer must fail.[2]

---

[2]  Oracle filed a motion to intervene in this appeal, seeking to protect its interests in the IAP software at issue and to prevent SpeedTrack from asserting infringement claims against Oracle's customers. A motions panel of this court denied Oracle's request on grounds that Oracle was not a party in the underlying case and did not move to intervene in the district court proceedings. Order, *SpeedTrack, Inc. v. Office Depot, Inc.*, No. 14-1475 (Fed. Cir. June 30, 2014), ECF No. 16. Oracle maintains that the case below never progressed to a stage where it should have intervened because it was stayed pending the

### C.  This Case Does Not Fall Within the *Rubber Tire* Exception to *Kessler*

SpeedTrack next argues that the *Kessler* doctrine does not apply to cases where the manufacturer is selling a component that is later combined with other objects and that combined product infringes.  SpeedTrack cites *Rubber Tire* for the proposition that the trade right set forth in *Kessler* attaches to the product and "continues only so long as the commodity to which the right applies retains its separate identity."  *Rubber Tire*, 232 U.S. at 418-19.  In *Rubber Tire*, Goodyear successfully defended its new tire design from an infringement claim brought by Rubber Tire.  *Id*. at 414.  Goodyear subsequently sold rubber to a customer, who manufactured its own version of the Goodyear tire found not to infringe.  *Id*. at 416.  Rubber Tire then sued that customer for infringement. Goodyear argued that, under the *Kessler* doctrine, "by virtue of the decree in its favor in the infringement suit," it has the right to restrain suits "not only against those who buy from it the structure which is the subject of the patent but also against those who buy its rubber and themselves make the patented tire."  *Id*. at 416-17.

---

*Walmart* case and terminated at an early stage, before any of the defendants had even filed answers to SpeedTrack's complaint.  Notably, however, in opposing intervention in this court, SpeedTrack argued that Oracle's interests "are adequately represented by the existing parties."  Opp. for Plaintiff-Appellant SpeedTrack, Inc. to Oracle America, Inc.'s Motion to Intervene at 10, *SpeedTrack, Inc. v. Office Depot, Inc.*, No. 14-1475 (Fed. Cir. June 19, 2014), ECF No. 15.  That statement seems to suggest that "the existing parties"—Appellees (who are Oracle's customers)—would be able to assert the same defenses as Oracle, which would include the *Kessler* doctrine.

The Supreme Court disagreed, holding that *Kessler* only protects an adjudged noninfringer's right to make and sell its noninfringing article. *Id.* at 417-18. The Court explained that, although Goodyear was entitled to make and sell both the tire and its rubber without threat of suit, that "trade right" attaches to the particular product "as an article of lawful commerce." *Id.* at 418. "If that commodity is combined with other things in the process of the manufacture of a new commodity, the trade right in the original part as an article of commerce is necessarily gone." *Id.* at 419. Accordingly, although Goodyear could "demand protection for its trade rights in the commodities it produced," it could not insist that customers who purchase its rubber are allowed to make and sell the patented structure. *Id.*

SpeedTrack cites *Rubber Tire* and argues that its patent claims are method claims that "target [Appellees'] use of Oracle's software *combined with their own hardware, software, and data.*" Appellant's Reply Br. 16 (emphasis in original). According to SpeedTrack, "[a]ny protection for Oracle's product cannot shield acts combining Oracle's product with other components to practice a claimed method." *Id.* But the allegations in SpeedTrack's complaint were directed specifically to Appellees' use of the IAP software to provide search functionality for their respective websites, not to any other components or any other activities. And, Appellees are invoking *Kessler* with respect to the same IAP software that acquired noninfringing status in *Walmart*, not as to other aspects of their computer systems.

In the *Walmart* case, Oracle's predecessor was awarded judgment that it does not infringe the '360 Patent by making, using, or selling the IAP software, *and* that its customer's use of that software does not infringe. The district court here found that SpeedTrack was unable to identify any material differences between Appellees' use of the IAP software and Walmart's noninfringing use of

that same software. *SpeedTrack*, 2014 WL 1813292, at *9. Given these circumstances, *Rubber Tire*'s discussion of combining components to create the patented device is inapplicable. SpeedTrack's attempt to distinguish *Kessler* on these grounds is without merit.

### D. *Kessler* Remains Binding Precedent

Finally, SpeedTrack argues that "the *Kessler* doctrine has been effectively displaced by modern preclusion principles." Appellant Br. 40. SpeedTrack concedes, as it must, that *Kessler* has not been overturned. It argues, however, that *Kessler* became unnecessary when the Supreme Court authorized non-mutual collateral estoppel in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 349 (1971). The Court in *Blonder-Tongue* did not cite *Kessler*, however, and there is no indication that the Court sought to overrule it. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*.").

We recognized in *MGA* that *Kessler* was issued "in the heyday of the federal mutuality of estoppel rule," when preclusion was limited to parties or privies in earlier litigation. *MGA*, 827 F.2d at 733 (citing *Blonder-Tongue*, 402 U.S. at 320-27). According to SpeedTrack, *Kessler* carved a narrow exception to this mutuality principle by permitting a manufacturer to enjoin suits against its customers. SpeedTrack maintains that, after *Blonder-Tongue*, issue preclusion is sufficient to prevent a patent owner from filing suit against an adjudged non-infringer's customers. As the facts of this case demonstrate, however, the *Kessler* doctrine is a necessary supplement to issue and claim preclusion: without it, a patent owner could sue a manufacturer for literal infringement and, if unsuccessful, file suit against the manufacturer's customers under the doctrine of equivalents. Or, a patent owner could file suit against the manufacturer's customers under any

claim or theory not actually litigated against the manufacturer as long as it challenged only those acts of infringement that post-dated the judgment in the first action. That result would authorize the type of harassment the Supreme Court sought to prevent in *Kessler* when it recognized that follow-on suits against customers could destroy the manufacturer's judgment right. *Kessler*, 206 U.S. at 289 ("The effect which may reasonably be anticipated of harassing the purchasers of Kessler's manufactures by claims for damages on account of the use of them, would be to diminish Kessler's opportunities for sale."); *see Brain Life*, 746 F.3d at 1056 ("The *Kessler* Doctrine fills the gap between these preclusion doctrines, however, allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." (emphasis in original)).

As we noted in *MGA* and stated in *Brain Life*, regardless of whether the *Kessler* doctrine was created as an exception to the mutuality of estoppel rule that existed at the time or as a matter of substantive patent law, we must apply the law as it exists. *See MGA,* 827 F.2d at 733-34; *Brain Life*, 746 F.3d at 1058. Because we must follow *Kessler* unless and until the Supreme Court overrules it, and because this appeal fits within its bounds, we agree with the district court that the entirety of Speed-Track's suit against Appellees is barred.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the *Kessler* doctrine precludes SpeedTrack from asserting any claims of the '360 Patent against Appellees. Accordingly, the district court's judgment is affirmed.

**AFFIRMED**